IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-01255-STV

HASAN MOHAMMED ALBALWAH,

    Plaintiff,

v.

JOSEPH B. EDLOW;[1]
KRISTI NOEM;
KASHYAP PATEL; and
PAMELA BONDI,

    Defendants.

_____

# ORDER
_____

Chief Magistrate Judge Scott T. Varholak

    This matter is before the Court on Defendants' Motion to Dismiss (the "Motion"). [#6] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##13, 16] This Court has carefully considered the Motion and related briefing, the entire case file and the applicable case law, and has determined that oral argument would not materially assist in the

---

[1] Kika Scott is a named Defendant in the Complaint as she was the senior official performing the duties of the Director of the United States Citizenship and Immigration Services ("USCIS") at the time the Complaint was filed. [#1 at ¶11] On July 15, 2025, Joseph B. Edlow was confirmed as the Director of USCIS. *See* USCIS, About Us, Organization, Leadership, Joseph B. Edlow, Director, USCIS, *available at* https://www.uscis.gov/about-us/organization/leadership/joseph-b-edlow-director-us-citizenship-and-immigration-services (last accessed October 29, 2025). Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Edlow "is automatically substituted as a party."

disposition of the Motion.  For the following reasons, the Motion is **GRANTED in part** and **DENIED in part**.

I.     BACKGROUND

Plaintiff is a lawful permanent resident of the United States and a citizen of Iraq. [#1 at ¶ 10]  Defendant Joseph B. Edlow, sued in his official capacity, is the Director of the USCIS, which is the component of the Department of Homeland Security ("DHS") responsible for adjudicating N-400 applications.  [*Id.* at ¶ 11; *see also supra* n. 1]  Defendant Kristi Noem, sued in her official capacity as the Secretary of the DHS, is responsible for overseeing DHS, including its adjudication of N-400 applications.  [#1 at ¶ 12]  Defendant Kashyap Patel, sued in his official capacity as the Director of the Federal Bureau of Investigation ("FBI"), is responsible for performing background and security checks for certain applications for immigration benefits.  [*Id.* at ¶ 13]  Defendant Pamela Bondi, sued in her official capacity, is the Attorney General of the United States; applicants for naturalization must establish eligibility to the satisfaction of the Attorney General.  [*Id.* at ¶ 14]

Plaintiff resides in Denver, Colorado and is the spouse of a United States citizen. [*Id.* at ¶ 10]  Plaintiff has resided in the United States for over three years.  [*Id.* at ¶ 18]  He is presently a practicing dentist in Colorado.  [*Id.* at ¶ 19]  Plaintiff submitted an N-400 application to become a naturalized citizen on January 2, 2025.  [*Id.* at ¶ 20]  He filed the necessary forms and supporting documentation, as well as the requisite filing fee.  [*Id.* at ¶ 20]  8 U.S.C. § 1427 outlines the statutory requirements for an individual to become a naturalized citizen.  Plaintiff is prima facie eligible for naturalization.  [*Id.* at ¶ 24]

There are several steps taken during a review of an application for naturalization. First, the Federal Bureau of Investigation ("FBI") conducts a full criminal background check on the applicant. 8 C.F.R. § 335.2(b). After completion of the background check, USCIS must conduct an in-person interview of the applicant. *Id.* § 335.2(c). Currently, Defendants are reviewing Plaintiff's application and have noted that "nothing is outstanding at this time." [#1 at ¶ 16] Plaintiff has not yet been scheduled for his naturalization interview. [*Id.* at ¶ 21]

While awaiting final adjudication of his N-400 application, Plaintiff has faced difficulties travelling abroad.[2] [*Id.* at ¶ 22] His elderly parents live outside of the United States and Plaintiff has only visited them twice within the past eight years. [*Id.*] Plaintiff additionally missed his sister's wedding while awaiting adjudication of his N-400 application. [*Id.* at ¶ 23] Accordingly, Plaintiff has faced mental and emotional distress, including stress and depression, throughout the pendency of his N-400 application. [*Id.* at ¶¶ 22-23]

Based on these allegations, Plaintiff seeks a writ of mandamus compelling Defendants to adjudicate Plaintiff's application within 30 days, among various other forms of relief. [*Id.* at 17-19] In Count One, Plaintiff seeks relief under the Mandamus Act pursuant to 28 U.S.C. § 1361. [*Id.* at ¶¶ 26-48] Plaintiff alleges that he has a clear right to the requested relief and Defendants have willfully and unreasonably failed to process or adjudicate his N-400 application within a reasonable time. [*Id.* at ¶¶ 27, 31] In Count Two, Plaintiff seeks relief under the Administrative Procedure Act ("APA"), pursuant to 5 U.S.C. §§ 706(1) and 706(2). [*Id.* at ¶¶ 49-55] Plaintiff alleges that Defendants have

---

[2] Plaintiff does not specify what specifically is meant by "difficulties" in the Complaint.

3

failed to carry out adjudicative and administrative functions delegated to them by law and have unreasonably delayed in acting on his application. [*Id.* at ¶¶ 52-53] Finally, in Count Three, Plaintiff seeks relief under the APA pursuant to 5 U.S.C. § 555(b). [*Id.* at ¶¶ 56-64] Plaintiff alleges that Defendants have unlawfully withheld and unreasonably delayed the legally required action of adjudicating Plaintiff's N-400 application. [*Id.* at ¶ 59] On June 24, 2025, Defendants filed the instant Motion seeking dismissal of Plaintiff's Complaint. [#6] Plaintiff has responded to the Motion [#10] and Defendants have replied [#12].

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242,

1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### III.   ANALYSIS

#### A.   Claim One: Mandamus Act

Defendants argue that Claim One should be dismissed because actions under the Mandamus Act are available only if a plaintiff has no other adequate remedy, and the APA provides such an alternative remedy. [#6 at 5] The Mandamus Act provides district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "To be eligible for mandamus relief, the petitioner must establish (1) that he has a clear right to relief, (2) that the respondent's duty to perform the act in question is plainly defined and peremptory, and (3) that he has no other adequate remedy." *Rios v. Zaglar*, 398 F.3d 1201, 1206 (10th Cir. 2005) (citing *Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990)).

"Most of the courts that have addressed the issue agree, for purposes of compelling agency action that has been unreasonably delayed, the mandamus statute and the APA are co-extensive." *Cao v. Upchurch*, 496 F.Supp.2d 569, 575 (E.D. Pa. 2007); *see also Ali v. Frazier*, 575 F. Supp. 2d 1084, 1090 (D. Minn. 2008) (same); *Azzam v. Chertoff*, No. CV 07-6617 GAF (JTLx), 2008 WL 11419061, at *5 (C.D. Cal. Jan. 29,

5

2008) (same); *Qadir v. Gonzales*, No. 07-3741 (FLW), 2008 WL 2625314, at *3 (D.N.J. June 27, 2008) (same). Indeed, the duty of timeliness placed on Defendants, which Plaintiff seeks a writ of mandamus to enforce, arises out of the APA. [*See* #1 at ¶ 29]

The APA and the Mandamus Act are "different means of 'compelling an agency to take action which by law it is required to take.'" *Hernandez-Avalos v. INS*, 50 F.3d 842, 844 (10th Cir. 1996) (quoting *Soler v. Scott*, 942 F.2d 597, 605 (9th Cir.)). Thus, it necessarily follows that where a plaintiff can properly bring a suit to compel an agency to take action under the APA, that plaintiff does not have "no other adequate remedy" as is required to bring an action under the Mandamus Act. *Ali*, 575 F. Supp. 2d at 1090 ("the APA itself provides a remedy for unlawfully delayed agency action, so plaintiffs in immigration-delay cases *have* a remedy available other than mandamus" (emphasis in original)). Indeed, the Tenth Circuit has noted that "when review by other means, such as under the APA, is possible, mandamus isn't available." *Audubon of Kan., Inc. v. U.S. Dep't of the Interior*, 67 F.4th 1093, 1111 n.10 (10th Cir. 2023).

Plaintiff argues, without further elaboration, that the Mandamus Act claim does not need to be dismissed merely because an APA claim has been brought. [#10 at 7] Plaintiff does not cite any legal authority for this assertion and, as detailed above, contrary authority from the Tenth Circuit exists. And though it is correct that plaintiffs may plead in the alternative under Federal Rule of Civil Procedure 8(d)(2), the Court finds that the type of claim Plaintiff alleges may be brought under Section 706 of the APA. Accordingly, a writ of mandamus is not available, as Plaintiff has an adequate alternative remedy.

As a result, the Motion to Dismiss as to Claim One is GRANTED.

B.     Claim Two: APA Section 706(1)

Defendants argue that Claim Two under Section 706(1) should be dismissed because Plaintiff has not adequately alleged that the amount of time Plaintiff has been waiting for evaluation of his N-400 application constitutes an unreasonable delay. [#6 at 6-10]  The APA tasks a reviewing court with "compel[ling] agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).  To state a claim for unreasonable delay, a party must assert "that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted).  A plaintiff making a claim under Section 706(1) must thus show "that the defendant (1) had a nondiscretionary duty to act, and (2) unreasonably delayed in acting on that duty." *Mendez v. Chertoff*, No. CIV-07-1402-M, 2008 WL 11337961, at *2 (W.D. Okla. July 30, 2008) (citing *Norton*, 542 U.S. at 63-65).

By regulation, the USCIS is required to "notify applicants for naturalization to appear before a USCIS officer for initial examination on the naturalization application only after the USCIS has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed." 8 C.F.R. § 335.2(b).  "USCIS shall grant the application if the applicant has complied with all requirements for naturalization under this chapter." *Id.* § 335.3(a).  "A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2." *Id.*

On the face of Plaintiff's Complaint, it is unclear whether the FBI has completed Plaintiff's background check. [*See* #1 at ¶¶ 25, 45]  Defendants' Motion to Dismiss implies

7

that the background check has not yet been completed, but it does not make an explicit statement on the matter. [#6 at 10] Thus, the Court construes Plaintiff's Complaint as pleading in the alternative that the delay in the processing of the application is because the FBI background check is still pending or that the delay is because USCIS failed to act after receiving notification that the background check was complete. This construction is especially necessary in this context where Plaintiff is unlikely to possess information to determine where in the process his application remains.

Accordingly, though the parties do not distinguish between Defendants, the Court finds it necessary to do so to properly evaluate this claim.

### 1. USCIS and DHS Defendants Edlow and Noem

If Plaintiff's background check has not yet been completed, USCIS is forbidden from conducting an interview with Plaintiff. 8 C.F.R. § 335.2(b). This regulation compels the conclusion that USCIS has no mandatory duty to adjudicate a naturalization application until the FBI has notified it that a full criminal background check has been completed. Many courts that have addressed this issue agree with this assessment. *Muminov v. Sessions*, No. 1:18CV1034, 2018 WL 5298386, at *4 (N.D. Ohio Oct. 25, 2018) ("the temporal requirement does not begin until USCIS receives a definitive response from the FBI"); *Antonishin v. Keisler*, 627 F. Supp. 2d 872, 879 (N.D. Ill. 2007) ("USCIS has no duty to adjudicate a naturalization application before receiving a 'definitive response' from the FBI that the applicant's background check is complete"); *Zaytsev v. Gantner*, No. 04 Civ.7101 WHP, 2004 WL 2251665, at *1 (S.D.N.Y. Sept. 24, 2004) ("[w]hile [USCIS] may have a duty to adjudicate visa applications within a

reasonable time, [USCIS] is not required to make any determinations until the requisite security checks have been completed" (internal citations and quotations omitted)).

Plaintiff does not address the duties of USCIS in this alternative, though he does allege that the USCIS Defendants lack statutory authority to withhold or delay action on an N-400 application pending a background investigation. [#1 at ¶ 45] Nevertheless, the Court cannot identify any alleged action that USCIS or the DHS must take while the FBI background check is pending. Accordingly, if the delay in processing is the result of the FBI not yet having completed a background check on Plaintiff, then Plaintiff has not adequately pled a Section 706(1) claim against Defendants Edlow and Noem and dismissal would be appropriate.

But, again, discovery has not yet begun and Plaintiff thus likely does not know whether the delay results from the FBI not completing the background check or the USCIS not scheduling the interview. Thus, the Court construes the Complaint as pleading these two scenarios in the alternative. Fed. R. Civ. P. 8(d)(2). And if the FBI has completed its background check and the USCIS has still refrained from evaluating Plaintiff's application, this Court finds, as many other courts do, that USCIS has a non-discretionary duty to adjudicate Plaintiff's naturalization application. *See Mowlana v. Mukasey*, No. 08-cv-01769-LTB, 2009 WL 130571, at *4 (D. Colo. Jan. 20, 2009) ("It cannot be doubted that Defendants owe Plaintiff a nondiscretionary duty to adjudicate his naturalization application in a reasonable amount of time."); *Sawan v. Chertoff*, 589 F. Supp. 2d 817, 828 (S.D. Tex. 2008) ("the USCIS has express statutory and regulatory duties to process naturalization applications"); *Palamarachouk v. Chertoff*, 568 F. Supp. 2d 460, 467 (D. Del. 2008) ("it is clear that there is a non-discretionary duty to adjudicate [naturalization]

9

applications"); *Sidhu v. Chertoff*, No. 1:07-CV-1188 AMI SMS, 2008 WL 540685, at *8 (E.D. Cal. Feb. 25, 2008) ("The APA provides a requirement that Defendants process Plaintiff's application within a reasonable time."); *Moretazpour v. Chertoff*, No. C 07-4264 BZ, 2007 WL 4287363, at *2 (N.D. Cal. Dec. 5, 2007) ("Once the FBI completes its criminal background investigation, the USCIS has a mandatory duty to complete the adjudication of the application."). The Court recognizes that there is contrary authority. *See Smith v. Johnson*, No. 16-cv-00066-GNS, 2016 WL 4030969, at *2 (W.D. Ky. July 26, 2016) (finding that USCIS does not have a clear, nondiscretionary duty to adjudicate naturalizations prior to conducting an interview); *Saini v. Heinauer*, 552 F. Supp. 2d 974, 979 (D. Neb. 2008) (same). The Court is unpersuaded by this view. The authority is clear that the USCIS "shall grant the application [for naturalization] if the applicant has complied with all requirements for naturalization under this chapter." 8 C.F.R. § 335.3(a). "Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016). Accordingly, the Court concludes that the USCIS must adjudicate naturalization applications "within a reasonable time," and "[w]ith due regard for the convenience and necessity of the parties or their representatives." 5 U.S.C. § 555(b). And the Court has authority through the APA to "compel action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

The APA gives courts the discretion to determine whether an agency delay is unreasonable. *Biodiversity Conservation All. v. Jiron*, 762 F.3d 1036, 1075 (10th Cir. 2014). The issue of unreasonable delay "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful." *Wyandotte Nation v. Salazar*, 939 F. Supp.2d 1137, 1148 (D. Wyo. 2013)

10

(quoting *Mashpee Wampanoag Tribal Council v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)).  Rather, the issue is whether the duration of time the agency has taken "satisfies the rule of reason." *Id.* at 1148-49 (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1102).

The Tenth Circuit, using guidance from the D.C. Circuit, has identified the following factors to guide courts in determining whether an agency has unreasonably delayed an action: "(1) the extent of the delay, (2) the reasonableness of the delay in the context of the legislation authorizing agency action, (3) the consequences of the delay, and (4) administrative difficulties bearing on the agency's ability to resolve an issue."  *Qwest Commc'ns Int'l, Inc. v. F.C.C.*, 398 F.3d 1222, 1239 (10th Cir. 2005) (citing *In re Chem. Workers Union*, 958 F.2d 1144, 1149-50 (D.C. Cir. 1992)).  The Tenth Circuit expressly adds a fifth factor to this list: "consideration of the complexity of the task envisioned by a court's remand order."  *Id.*[3]  As other courts have noted, however, a "claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." *Azadani v. Gaudiosi*, No. 24-cv-00825-CNS, 2025 WL 35597, at *4 (D. Colo. Jan. 6, 2025) (quoting *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022)).  Accordingly, when "there is not enough information in the pleadings to adequately analyze" the *Qwest* factors, it is appropriate for the court to deny a defendant's motion to

---

[3] Plaintiff argues that the *Qwest* factors impose an inappropriate test for review of an unreasonable delay claim.  [#10 at 12-14]  But district courts are bound to follow the precedent of the circuit in which the district court is located.  *See United States v. Spedalieri*, 910 F.2d 707, 709 (10th Cir. 1990).  And through *Qwest* the Tenth Circuit has issued guidance that this Court is bound to follow.  *Id.*; *see also Glenwood Springs Citizens' All.*, 639 F. Supp. 3d at 1180 (applying the *Qwest* factors to an unreasonable delay case).

dismiss a plaintiff's APA claims.  *Id.*  A review of the *Quest* factors based upon the information available in the pleadings demonstrates that this case falls within this general admonition.

In considering the first *Qwest* factor, the Court addresses the extent of the delay. Plaintiff submitted his N-400 application about ten months ago.  [#1 at ¶ 20]  Such a delay may be unreasonable in light of Congress's 180-day target for processing immigration benefit applications.  8 U.S.C. § 1571(b).  In addition, in the Denver Office, USCIS completes 80 percent of N-400 applications within 8.5 months.  U.S. CITIZENSHIP AND IMMIGR. SERVS., CHECK CASE PROCESSING TIMES, https://egov.uscis.gov/processing-times/ (last accessed October 29, 2025).  Defendants argue that Plaintiff has not stated a claim for unreasonable delay because his application has not been pending for an unreasonable amount of time.[4]  [#6 at 7]  However, there is no bright-line rule as to when

---

[4] Defendants cite to several cases that fail to persuade the Court on this point.  First, Defendants cite *Mowlana* for the proposition that a delay of two years to adjudicate the plaintiff's naturalization application, and of five months after the time the investigation and background check were completed, is not an unreasonable delay.  *See Mowlana*, 2009 WL 130571, at *4.  However, the *Mowlana* court treated the defendants' motion as a motion for summary judgment.  *Id.*  Rather than finding that plaintiff did not adequately plead an unreasonable delay, the court found that plaintiff did not show that the delay was "clear[ly] and indisputabl[y]" unreasonable.  *Id.*  Here, the Court declines to convert the Motion into a summary judgment motion as it has not been provided sufficient facts to decide reasonableness.  Defendants also cite to *Abbaszadegan v. Chertoff* for the proposition that a delay of nearly four years in completing the FBI background check was not unreasonable.  No. 07-cv-0702-AW, 2008 WL 11509701, at *1, 3 (D. Md. July 8, 2008). But the context of *Abbaszadegan* is important.  Around 2007-2009, numerous lawsuits of this nature were being filed because events in the early 2000s increased national security concerns and simultaneously increased the FBI's workload in conducting background checks.  *See Aslam v. Mukasey,* 531 F. Supp. 2d 736, 746 (E.D. Va. 2008); *Dawoud v. Dep't of Homeland Sec.*, No. 3:06-cv-1730-M (BH), 2007 WL 4547863, at *7 (N.D. Tex. Dec. 26, 2007).  Thus, courts may have found, in that time period, that prolonged delays were reasonable.  Nevertheless, courts in recent years have held that "[n]ational security interests and the complexity of the background check process can only excuse

an agency's delay in acting becomes unreasonable. *Wyandotte Nation*, 939 F.Supp.2d at 1148. Without more information, the Court cannot conclude that this factor supports Defendants' position and outweighs the other *Qwest* factors. Rather, Plaintiff has plausibly alleged that a delay of ten months is unreasonable, especially given that USCIS has not yet even scheduled Plaintiff's in-person interview. [#1 at ¶ 25]

Second, the Court addresses the reasonableness of the delay in the context of the legislation authorizing agency action. Defendants note that no legislative directive mandates a prescribed time for Defendants to schedule a naturalization applicant's in-person interview. [#6 at 8] "However, the Tenth Circuit determined in *Forest Guardians v. Babbitt* that, when an agency has no 'concrete deadline establishing a date by which it must act,' the APA's 'general admonition' that agencies act 'within a reasonable time' controls." *Glenwood Springs Citizens' All. v. United States Dep't of the Interior*, 639 F.Supp.3d 1168, 1183 (D. Colo. 2022) (quoting *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999)). And as previously noted, Congress has provided the following policy statement: "processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). Accordingly, it is plausible that a delay of ten months is unreasonable given this legislative backdrop.

Third, the Court addresses the consequences of the delay. Defendants argue that factor three is neutral because Plaintiff alleges only harms suffered frequently by applicants for immigration benefits. [#6 at 8-9] Indeed, some courts have held that

---

*reasonable delay*." *Doe v. Risch*, 398 F. Supp. 3d 647, 656 (N.D. Cal. 2019) (citation omitted) (emphasis in original).

"mental health and welfare interests" including "prolonged separation from [an applicant's] relatives" are experienced by all petitioners and thus do not outweigh other factors in an unreasonable delay analysis. *See Tang v. United States*, No. 23-13187-RGS, 2024 WL 1836624, at *3 (D. Mass. Apr. 26, 2024). Nevertheless, other courts have found that allegations such as stress, emotional hardship, and expense may indicate that a plaintiff has adequately pled an unreasonable delay claim. *Azadani*, 2025 WL 35597, at *4. Here, Plaintiff asserts that he has struggled to visit his parents abroad and missed his sister's wedding as a consequence of the delay in the processing of his naturalization application. [#1 at ¶¶ 22-23] Additionally, Plaintiff alleges that he has experienced emotional distress and depression. [*Id.*] Accordingly, Plaintiff has plausibly alleged that the third *Qwest* factor weighs in his favor.

Fourth, the Court addresses administrative difficulties bearing on the agency's ability to resolve the issue. Defendants argue that Plaintiff asks them to prioritize Plaintiff over other applicants. [#6 at 9-10] But this assertion is unsupported by the record before the Court. The pleadings fail to make clear how Defendants prioritize N-400 applications, how long the "queue" is for the applications, or where Plaintiff's place is within this "queue." Accordingly, the Court has not been provided sufficient facts to determine whether this factor weighs in favor of Defendants.

Finally, the Court considers the complexity of the task envisioned. Defendants argue that because two separate agencies must work independently to adjudicate a petitioner's application, this task is complex. [#6 at 10] But, again, the record is devoid of facts that would suggest a high level of complexity. As mentioned earlier, the Denver Office is able to complete 80% of N-400 applications within 8.5 months. U.S. CITIZENSHIP

AND IMMIGR. SERVS., CHECK CASE PROCESSING TIMES, https://egov.uscis.gov/processing-times/ (last accessed October 29, 2025). This includes both the FBI and the USCIS's tasks related to the evaluation. And while the USCIS must wait for the FBI to complete a background check before scheduling its interview, the pleadings do not set forth any other manner in which the two agencies would need to work together or why any such coordination makes this task particularly complex. Accordingly, the difficulties of the task are unclear and potentially outweighed by other *Qwest* factors.

Thus, the Court finds that the Plaintiff has plausibly alleged an unreasonable delay claim under the APA. As a result, the Motion to Dismiss the Section 706(1) portion of Claim Two against Defendants Edlow and Noem is DENIED.

### 2. FBI and Attorney General Defendants Patel and Bondi

Once again, the exact cause of the delay in processing Plaintiff's application is not clear. It is possible that the FBI has already completed Plaintiff's background check. In this event, Plaintiff does not allege that the FBI has any remaining duty with respect to his application. Accordingly, as to this alternative, Plaintiff has not stated a Section 706(1) claim against Defendant Patel and dismissal of Defendant Patel would be appropriate. But it is possible (and indeed suggested by Defendant's Motion [#6 at 10]) that the FBI has not yet completed Plaintiff's background check, thus delaying his naturalization application's processing. The Court thus turns to whether, in that scenario, Plaintiff has plausibly alleged a Section 706(1) claim against Defendants Patel and Bondi.

The "only agency action that can be compelled under the APA is action legally required." *S. Utah Wilderness All.*, 542 U.S. at 63 (emphasis omitted). The relevant authority requires that USCIS receive a "definitive response" from the FBI that "a full

criminal background check of an applicant has been completed" before USCIS can interview an applicant. 8 C.F.R. § 335.2(b). Whether this regulation imposes a mandatory duty on the FBI to complete a naturalization applicant's background check is subject to a split in authority. *Compare Moretazpour*, 2007 WL 4287363, at *1 ("where Congress has conditioned [USCIS's] mandatory action on the FBI's completion of background checks, and where applicants must pay the FBI, through [USCIS], to complete the background checks, the Court holds that Congress has, by implication, imposed on the FBI a mandatory duty to complete the background checks"); *and Khdir v. Gonzales*, No. 07-cv-00908-MSK-MEH, 2007 WL 3308001, at *6 (D. Colo. Nov. 6, 2007) ("Logically, if USCIS is prevented from acting on an application until the FBI completes a background check, the FBI must be under some legal duty to complete a requested background check, even if there is no set time within which the FBI must do so."); *with Wang v. Gonzales*, No. 07-02272-JWL-DJW, 2008 WL 45492, at *3 (D. Kan. Jan. 2, 2008) ("this court agrees . . . that the FBI has no express mandatory duty, and the court should not infer such a duty" (quotation omitted)); *Omar v. Mueller*, 501 F. Supp. 2d 636, 640 (D.N.J. 2007) ("Plaintiffs [have not] cited any authority compelling the FBI to complete the [background] check within a specified time period. Thus, Plaintiffs' claims do not and cannot arise under the APA."); *and Ibrahim v. Chertoff*, 529 F. Supp. 2d 611, 614-15 (E.D.N.C. 2007) ("8 C.F.R. § 335.2(b), does not contain a specific time period in which the [background] check must be completed . . . [and therefore] the court cannot consider plaintiff's claim based on the APA.");

This Court tends to agree with those courts that have concluded that Section 335.2(b) creates a mandatory duty upon the FBI. "Because the FBI has a legal obligation

16

to complete a background check at some point in time, it appears that the APA could supply the court with authority to compel action by the FBI to promptly complete a background check that has been unreasonably delayed." *Khdir*, 2007 WL 3308001, at *6. "To hold otherwise could result in the indefinite suspension of a naturalization application adjudication should the FBI fail to complete the requisite criminal background check, which would violate the APA." *Moretazpour*, 2007 WL 4287363, at *2.

Ultimately, however, the Court need not decide the issue. Defendants do not argue that the FBI does not have a mandatory duty to complete a background check. Nor do they argue that the Attorney General does not have a mandatory duty in this regard. Defendants instead focus their argument on the sufficiency of Plaintiff's allegations of delay. [*See generally* #6] And "it is not the court's role to supply legal support [or arguments] for either Party's position." *Howell v. Liberty Life Ass. Co. of Boston*, No. 17-cv-02976-CMA-NYW, 2018 WL 3126101, at *5 n.3 (D. Colo. June 26, 2018). Thus, for the reasons previously described, the Court concludes that Plaintiff has adequately pled an unreasonable delay claim under the *Qwest* factors. As a result, the Motion to Dismiss the Section 706(1) portion of Claim Two against Defendants Patel and Bondi is DENIED.

### C. Claim Two: APA Section 706(2)

Defendants argue that Claim Two under Section 706(2) should be dismissed because Plaintiff has not identified a "final agency action" which can be challenged under the statute. [#6 at 6] The APA requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . (C) in excess of statutory

17

jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law."  5 U.S.C. §§ 706(2)(A), (C), (D).

Under Section 706(2), a plaintiff may challenge only final agency actions. *Utah Native Plant Soc'y v. United States Forest Serv.*, 923 F.3d 860, 866 (10th Cir. 2019).  For an agency action to be final, it must "not be of a merely tentative or interlocutory nature" and must "be one by which rights or obligations have been determined or from which legal consequences will flow."  *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)) (second quotation omitted).  Defendants argue that Plaintiff does not meet this standard because he merely alleges that Defendants unlawfully failed to act or withheld agency action.  [#6 at 6]

In response, Plaintiff asserts that Defendants' conduct in unreasonably delaying adjudication of his N-400 application amounts to "issu[ance] [of] a *de facto* denial of his application."  [#10 at 8]  Therefore, Plaintiff argues that delay is not a tentative or interlocutory action because it is a decision in itself "to unreasonably delay adjudication of Plaintiff's naturalization application."  [*Id.*]  In addition, Plaintiff argues that legal consequences have resulted from the delay because Plaintiff has not obtained citizenship.  [*Id.*]

The Court respectfully disagrees with this framing.  A similar argument was made in *Omar*.  In response, the court noted that "[d]efendants are not bound to act on [plaintiff's] N-400 application within a prescribed time frame [and] [t]he Court has no basis upon which to conclude that [plaintiff's] application has been effectively denied, simply because it has been pending [for several years]."  *Omar*, 501 F. Supp. 2d at 641.  The Court agrees with this analysis.  Plaintiff's application remains pending; Defendants'

18

failure to interview Plaintiff is tentative.  There is no allegation that Defendants have refused to interview Plaintiff or refused to grant his N-400 application.  Rather, Plaintiff's application is still in the process of being evaluated.  The Court cannot conclude that Plaintiff's application has been denied *de facto* simply because it has been pending since January.  Accordingly, the Court finds that Defendants' delay in interviewing Plaintiff and assessing his application is a tentative, not final, action. Thus, Plaintiff cannot state a claim under Section 706(2).

As a result, the Motion to Dismiss as to the Section 706(2) portion of Claim Two is GRANTED.

### D.     Claim Three: APA Section 555(b)

Defendants argue that Claim Three should be dismissed because Section 555(b) does not provide an independent cause of action.  [#6 at 5]  Under the APA, administrative agencies are required to conclude matters "with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time."  5 U.S.C. § 555(b).  Section 555(b) represents a "general timing provision" which governs when "an agency has no concrete deadline establishing a date by which it must act."  *Forest Guardians*, 174 F.3d at 1190).  Section 706(1) provides the Court with authority to compel action delayed unreasonably in violation of Section 555(b)'s timing provision.  Thus, when a plaintiff alleges violations of Sections 555(b) and 706(1), courts find that they can enforce the duties imposed by the APA under Section 706(1).  *See Mosayebian v. Blinken*, No. 24-cv-130-JLS-MMP, 2024 WL 3558378, at *4 (S.D. Cal. July 25, 2024) (finding that Section 555(b) does not create an independent cause of action, but rather creates a duty that may be enforced under Section 706(1)); *see also Yu v. Brown*, 36 F.Supp.2d 922,

932 (D.N.M. 1999) (describing that when an agency is required to act within a reasonable time as compelled by Section 555(b), Section 706 is the statute through which courts may intervene to determine whether the delay is unreasonable).

Plaintiff argues that because Section 555(b) imposes what he describes as a "mandatory, non-discretionary duty," Section 555(b) is judicially enforceable on its own. [#10 at 6]  Plaintiff correctly notes that Section 706(1) operates in tandem with underlying statutory obligations such as Section 555(b).  [*Id.*]  But although Section 555(b) creates an obligation for administrative agencies, that obligation must be enforced by the Court through other provisions such as Section 706(1).  *Mosayebian*, 2024 WL 3558378, at *4.  Thus, Section 706(1) is the proper statute under which to bring this claim.

Accordingly, the Motion to Dismiss as to Claim Three is GRANTED.

## IV. Conclusion

For the foregoing reasons, the Court respectfully **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss.  [#6]  Claims One and Three are dismissed.  To the extent Claim Two brings a cause of action arising under 5 U.S.C. § 706(2), Claim Two is dismissed.  To the extent Claim Two brings a cause of action pursuant to 5 U.S.C. § 706(1), it shall proceed.  It is further **ORDERED** that the parties shall contact chambers within five days to set the matter for scheduling conference.

DATED:   October 29, 2025          BY THE COURT:

s/Scott T.  Varholak
Chief United States Magistrate Judge

20